(44 South. 126.)

No. 16,577.

SMITH & STANDIFER v. IVEY BROS.
et al.

In re SMITH & STANDIFER.

(June 10, 1907.)

SALES—CONTRACT—OPTION.

An agreement to sell conditioned on the payment of a certain sum at a specified date, the prospective purchaser promising, in case of his failure to pay, to return the property delivered to him, is an option to purchase, and not a contract to pay the price or to return the property purchased.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 49–51.]

(Syllabus by the Court.)

Certiorari to Court of Appeals, Parish of Morehouse.

Action by Smith & Standifer against Ivey Bros. and others. Judgment for plaintiff was affirmed by the Court of Appeals as to certain of the parties, and plaintiffs apply for certiorari or writ of review. Affirmed.

John B. Holstead and Clayton, Hawthorn & Atkinson, for applicants. Madison & Madison, for respondents.

LAND, J. Plaintiffs sued Ivey Bros., as principals, and J. A. Ivey, Sr., as guarantor, in solido, for $1,150, the price of an ice plant alleged to have been sold and delivered to Ivey Bros. at Ruston, La., as shown by written contract embodied in the petition. The principal contract reads as follows:

"Smith & Standifer agree to sell and they deliver to Ivey Bros. the property in Ruston, La., known as the 'Purity Ice Plant,' the consideration of the sale being eleven hundred and fifty dollars, payable by said Ivey Bros. to said Smith & Standifer on or about the first of September, 1904. It is expressly agreed between vendor and vendee that the ownership of this property does not pass from Smith & Standifer to said Ivey Bros. until the full and final payment of the purchase price of the same as herein fixed shall be made. As a part of the consideration of sale of that property, said Ivey Bros. agree to erect said ice plant at Mer Rouge, La., and to move the same from Ruston, La., accepting the delivery of the said property where it is now located at Ruston, La., and said Ivey Bros. are to bear all expenses of removal, erection, repair, and running the same or of any additions that may be made thereto, and, as part of the purchase price aforesaid, vendees agree to pay said Smith & Standifer one half of the profits of the running of the said ice plant. That said Ivey Bros. agree and promise that, if they fail to comply with their contract in making the payments provided for by September 1, 1904, that they will, without cost to said vendors, return and replace, with all additions and repairs, said property to said Smith & Standifer at Ruston, La., or to such other place as they may choose as near or convenient as Ruston, La. These vendees agree to give bond and good security in the amount of eleven hundred and fifty dollars for the faithful performance of this contract on their part in every particular. It is agreed that at any time prior to September first, 1904, these vendees may pay the eleven hundred and fifty dollars, and one-half of the profits, less ten per cent. per annum discount on one thousand dollars, and said payment when made shall ipso facto transfer the property and stop interest in profits. This June 23, 1903."

The contract of guaranty, signed by J. A. Ivey, Sr., reads in part as follows:

"Now, in order to secure the faithful performance of this contract in every particular on the part of said Ivey Bros., we separately and in solido hereby guarantee the fulfillment of said contract by Ivey Bros. to the amount of eleven hundred and fifty dollars, which amount of money we jointly and separately agree to pay to Smith & Standifer in case said Ivey Bros. fail to comply with their aforesaid agreement."

The petition alleges that said ice plant was delivered to said Ivey Bros., who moved it into Morehouse parish, and have had possession and control of the same ever since the contract was made; that said Ivey Bros. have not paid anything on said contract, and have utterly failed to comply with said agreement in any particular, although petitioners have demanded compliance of the same of said obligors since the maturity of the said obligation.

All of the defendants filed an exception of no cause of action, which was sustained by the district judge. Plaintiff appealed to the Court of Appeal, which affirmed the judgment as to Ivey Bros., but held that the petition disclosed a cause of action against J. A. Ivey, Sr., the guarantor. Plaintiffs asked for a rehearing, which was refused,

whereupon they applied to the Supreme Court for a writ of certiorari or review, which was granted.

The conclusion of the Court of Appeal as to the suit against Ivey Bros. is thus expressed:

"At most, the contract represents a conditional promise on the part of the plaintiffs to sell their ice plant at a stipulated price to be paid within a given time, with an option on defendants to pay this sum or to return the property. Not having exercised this option, they are under obligations to return the property."

The guarantor was held liable because he had warranted that Ivey Bros. would perform their undertaking in every particular.

Taking the contract as a whole, the agreement to sell was conditioned on the payment of the purchase price. The property was not to pass until the price was paid in full, and in the meantime the vendors were to receive one-half of the profits of the running of the ice plant. There was no express agreement on the part of the vendees to pay the price, but they agreed and promised, if they failed to do so, to return the property with all of its additions to the vendors. It was agreed that the payment of the price at any time before September 1, 1904, should transfer the property and stop interest in the profits. The parties themselves stipulated that the failure to pay the price on or before the day fixed should bind the vendees to return the property with all of its additions. The obligation was not to pay the price or return the property, but to return the property on a failure to pay. In Guss, McNeal & Gray v. Nelson (January 15, 1906) 26 Sup. Ct. 260, 200 U. S. 298, 50 L. Ed. 489, there was an absolute promise on the part of the plaintiff in error to pay an additional sum at a specified date, or, in lieu thereof, to turn back the property. In that case there was an option to return a purchase. In this case there was an option to purchase, and an obligation to return the property in case the option was not exercised.

We see no error in the judgment of the Court of Appeal, and it is therefore affirmed.